OPINION
{¶ 1} J.S. appeals from a judgment of the Montgomery County Court of Common Pleas, Juvenile Division, which adjudicated him a juvenile delinquent by reason of having committed acts that would constitute four counts of rape, a first degree felony, if committed by an adult. J.S. contends that the trial court admitted inadmissible hearsay during the delinquency hearing and that its adjudication was against the manifest weight of the evidence. For the following reasons, the trial court's *Page 2 
judgment will be affirmed.
 {¶ 2} The state's evidence at the adjudication hearing revealed the following facts.
 {¶ 3} K.K., who was born on August 31, 1993, and sixteen-year old J.S. were acquainted with each other through J.C., a mutual friend and K.K.'s former boyfriend. In the late spring of 2006, when K.K. was twelve, J.S. began coming to K.K.'s home with J.C. K.K.'s parents apparently worked during the evening and nightime on certain days, and they did not arrive home until approximately 3:00 a.m. While her parents were at work, K.K. babysat her seven-year old brother and four-year old sister.
 {¶ 4} The first time that J.S. came to her home with J.C, K.K. let them in through the window. J.C. and J.S. came in the late afternoon and stayed until approximately 10:00 pm. While her brother and sister watched television in the living room, K.K. performed fellatio on J.S. in her bedroom; J.C. was also in the bedroom with them. K.K.'s clothes remained on during this encounter. After K.K. performed oral sex, J.S. and J.C. left through the window. K.K.'s mother returned home at approximately 3:00 a.m. K.K. did not tell her what had happened because she was afraid that her parents would feel ashamed and she would get into trouble.
 {¶ 5} Another night a short time later, J.C. and J.S. again came to K.K.'s home. K.K.'s parents were at work, and her brother and sister were watching a movie in their room. K.K. let them in through the window. K.K., still clad, performed oral sex on J.S. on her bed in her bedroom. K.K.'s mother returned home at about 2:30 a.m. K.K. did not discuss what had occurred with her.
 {¶ 6} On a third night, a similar incident occurred. J.C. and J.S. came to K.K.'s *Page 3 
home while her parents were at work, and she performed oral sex on J.S., with J.C. present, while on her bed in her bedroom. J.C. and J.S. again entered and exited through a window.
 {¶ 7} On a fourth occasion, J.C. came to K.K.'s home at night with J.S. and two other boys. The two other boys stayed in the yard while J.C. and J.S. went inside through the window. K.K. performed fellatio on J.S. in her bedroom with J.C. there. K.K.'s brother and sister were in the living room. K.K. still did not mention these incidents to her parents. K.K. testified that a similar incident occurred on another night during the summer of 2006.
 {¶ 8} J.S. came to K.K.'s home for the last time in August 2006. On that night, K.K. let J.C. and J.S. in through the front door. K.K.'s siblings were downstairs sleeping, and her parents were at work. K.K. and J.S. engaged in vaginal intercourse while K.K. simultaneously performed fellatio on J.C. This sexual conduct took place on K.K.'s parents' bed. After K.K. and J.S. had intercourse, J.S. and J.C. left through the front door.
 {¶ 9} K.K. told her mother about the sexual activity a couple of weeks later. K.K.'s father then contacted the Oakwood police department.
 {¶ 10} On August 30, 2006, Detective Mike Jones interviewed K.K. about the alleged sexual activity. K.K. provided Jones with a written statement that she had previously written at home. At that time, Jones first learned of J.S.'s involvement. Soon thereafter, Jones contacted J.S.'s father and received permission to pick up J.S. from school. On September 5, 2006, Jones picked up J.S. from school, took him to the Oakwood police department, and spoke with him in an interview room. During *Page 4 
their conversation, J.S. told Jones that "he got a blow job from [K.K.]" on two different occasions and eventually had sex with her. J.S. agreed to provide a written statement, which read:
 {¶ 11} "Beginning of summer, [J.C.] sais [sic] lets go to [K.K.'s] tonight, he [sic] parents are working. I say why, I hate going there, he sais trust me. I say ok. So that night we go. We show up and she sais stay quiet, the kids are upstairs. We talk and listen to music for 15 minutes and [J.C.] sais we are gong to have sex. She sais why. [J.C.] responds because I want to. She sais [`]ok, but don't be loud.' The [sic] start having sex. He sais give [J.S.] head. She said why, he sais just do it. So she gives me head. 1 month later, we go over again and do the same, listen to music and talk. [J.C.] goes upstairs. Everyone eventually followed. Me and [J.C.] are watching t.v. and [K.K.] is saying why are you up here, go down stairs. [J.C.] sais no. But [A.] goes. [J.C.] sais let's have sex. Once again [K.K.] sais why? [J.C.] sais because. [J.C.] sais if you don't I'll tell people you are a whore and we had sex, so she does, [J.C.] sais do [J.S.] too so we do and [J.C.] gets head while me and [K.K.] have sex. The End."
 {¶ 12} Jones testified that neither K.K. nor J.S. were certain about the dates on which the sexual activity occurred.
 {¶ 13} In J.S.'s defense, J.S.'s father testified that J.S. lived with his mother in Huber Heights until the third week of June 2006. He further testified that J.S. had been with him on Friday, August 18, 2006, a date which he recalled because he had proposed marriage to his girlfriend. J.S.'s father stated that he knew J.S.'s whereabouts on that Friday night and Saturday. On cross-examination, J.S.'s father indicated that J.S. had friends in Oakwood prior to moving there in June 2006 and had *Page 5 
visited often. J.S.'s father could not account for J.S.'s whereabouts on dates other than August 18 and 19, 2006.
 {¶ 14} On October 18, 2006, the State filed a complaint alleging that J.S. was a delinquent child and charged him with four counts of rape of a child less than thirteen years of age. Counts One and Two alleged that J.S. engaged in sexual conduct with K.K., a child less than thirteen years old, between June 1, 2006 and August 13, 2006. Counts Three and Four alleged that J.S. engaged in sexual conduct with K.K., a child less than thirteen years old, on August 18, 2006. On December 15, 2006, the court held an adjudicatory hearing at which K.K., Jones, and J.S.'s father testified. On January 3, 2007, the juvenile court found J.S. to be responsible for the four counts of rape. On February 16, 2007, the trial court committed J.S. to the custody of the Department of Youth Services for a period of twelve months up to age 21 on all counts. Counts One and Two were to be served concurrently with each other and consecutive to Counts Three and Four; Counts Three and Four were to be served concurrently with each other and consecutive to Counts One and Two, for an aggregate term of twenty-four months of institutionalization. J.S. was also ordered to register as a juvenile sex offender.
 {¶ 15} J.S. raises two assignments of error on appeal, which we will address in reverse order.
 {¶ 16} II. "THE TRIAL COURT ERRED IN ALLOWING PREJUDICIAL AND IMPERMISSIBLE HEARSAY INTO EVIDENCE."
 {¶ 17} In his second assignment of error, J.S. claims that the trial court admitted prejudicial hearsay testimony. He points to the following portion of Jones's testimony *Page 6 
on direct examination.
 {¶ 18} Q: "So it's fair to say that the statement she wrote was not in response to any questions that you had asked her?
 {¶ 19} A: "That's correct.
 {¶ 20} Q: "And was it within that statement that you first heard the name [J.S.]?
 {¶ 21} A: "I believe so.
 {¶ 22} Q: "And what did [K.K.] tell you about [J.S.]?
 {¶ 23} A: "She said that he was a friend of the other individual that we were interviewing or looking into, and she said that on occasion [J.S.] had come over along with this other individual, and she had performed sexual conduct and contact with this individual.
 {¶ 24} Defense counsel: "I'm going to object. I think, number one, that's a legal conclusion. Number two, it's hearsay. He can testify as to what [K.K.] testified to, and any testimony from the detective as to what she said would clearly be hearsay and inadmissible.
 {¶ 25} The Court: "Response?
 {¶ 26} Prosecutor: "Judge, I don't believe it's hearsay. It's what she told the detective, so he has firsthand knowledge of that.
 {¶ 27} The Court: "Right. I don't believe it's hearsay either. I'll overrule the objection. As to the issue of whether or not he has a legal conclusion: Detective, just tell her what you were told. I agree that you determining sexual contact or conduct would be a legal conclusion, all right.
 {¶ 28} Jones: "Okay. *Page 7 
 {¶ 29} Q: "What words did [K.K.] use to describe what happened between her and [J.S.]?
 {¶ 30} A: "She stated that she had given him oral sex on more that one occasion.
 {¶ 31} Q: "Okay. Did she have the dates of these occasions?
 {¶ 32} A: "No, she did not.
 {¶ 33} Q: "But in your report is it fair to say there are some dates mentioned?
 {¶ 34} A: "That's correct.
 {¶ 35} Q: "And how did you come up with those dates?
 {¶ 36} A: "We narrowed it down by just first of the month, end of the month, and she would say closer to the end of the month.
 {¶ 37} Defense counsel: "Your Honor, I'm going to object again to what she said. This is an out-of-court statement being offered for the truth of the matter therein, and it's clearly hearsay, and no exception applies, and this Detective cannot testify to what she said.
 {¶ 38} The Court: "Overruled."
 {¶ 39} J.S. argues that Jones's testimony regarding what K.K. told him about the sexual acts between her and J.S. and the dates on which they occurred was inadmissible hearsay. In response, the state argues that the statements are not hearsay because they are not offered to prove the truth of the matter asserted. Specifically, the state asserts: "[T]hey were not offered to prove that sexual conduct occurred between the victim and the juvenile or to prove the dates on which the conduct occurred. Rather, the testimony was elicited and offered to establish how *Page 8 
Detective Jones came to investigate this juvenile and how the detective and the victim arrived at the dates identified in the State's complaint." Alternatively, the state asserts that any error in the admission of this testimony was harmless considering that both the victim and J.S. admitted that the alleged sexual acts occurred.
 {¶ 40} Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Under the general rule, a declarant's prior statement to a police officer is inadmissible hearsay unless it satisfies one of the exceptions to hearsay under Evid.R. 803 or is excluded from the hearsay rule under Evid.R. 801(D). Evid.R. 801(D)(1) provides, in pertinent part, that a prior statement by a declarant is not hearsay if the declarant testifies at trial and is subject to cross-examination concerning the statement and the statement is "consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive."
 {¶ 41} In the present case, Jones's testimony at trial regarding K.K.'s allegations of sexual activity with J.S. clearly repeated an out-of-court statement by K.K., the declarant. At trial, the state did not argue that the testimony was being offered for a reason other than for the truth of the matter, and we see no basis for the presentation of K.K.'s prior statement except to reinforce K.K.'s allegation that she and J.S. had engaged in oral sex on more than one occasion.
 {¶ 42} We reject the state's contention that Jones's testimony merely explained the officer's investigatory process. To accomplish that goal, Jones could have simply testified that he spoke with K.K. about her allegations and, based on their *Page 9 
conversation, interviewed J.S. about the allegations. Cf. State v.Semenchuk, Cuyahoga App. No. 79523, 2002-Ohio-674. The state had no need to elicit testimony of the details of K.K.'s allegations, and to do so was contrary to Evid.R. 801.
 {¶ 43} Moreover, the prosecutor's argument at trial — that the officer had firsthand knowledge of K.K.'s statement — misses the point of the hearsay rule. The issue was not whether the officer had personal knowledge of K.K.'s statements, see Evid.R. 602, but whether the officer was permitted to repeat the statements by K.K. at trial. The prosecutor's argument in response to the hearsay objection failed to address the relevant issue.
 {¶ 44} Finally, we find no basis for the admission of Jones's testimony of K.K.'s prior statement under Evid.R. 801(D)(1). During defense counsel's cross-examination of K.K., counsel repeatedly questioned K.K. on the dates of the sexual activity and her inability to recall the exact dates when the sexual activity occurred. He asked K.K. about the portion of her written statement that indicated that she had not seen J.C. during the middle of June and July. Defense counsel did not raise an issue of whether her allegations of oral sex and vaginal intercourse with J.S. were a recent fabrication. We note that the state has not argued — at any time — that Evid.R. 801(D)(1)(b) applied. Accordingly, in our view, Jones's testimony that K.K. had told him that she had had oral sex with J.S. was inadmissible hearsay and should have been excluded.
 {¶ 45} Likewise, Jones should not have been permitted to testify to K.K.'s statements during her interview regarding how they obtained the dates of the offenses. Jones' testimony established that the date in his report was derived from his conversation with K.K. in which he asked her "first of the month, end of the month"- *Page 10 
type questions. The substance of their conversation constituted inadmissible hearsay.
 {¶ 46} Although the trial court erred in overruling J.S.'s hearsay objections, we agree with the state that this error was harmless beyond a reasonable doubt. K.K. previously testified at trial, and J.S. was given the opportunity to cross-examine her about her prior statements. See Crawford v. Washington (2004), 541 U.S. 36, 59, n. 9, 124 S.Ct. 1354,158 L.Ed.2d 177 ("Finally, we reiterate that, when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements.");California v. Green (1970), 399 U.S. 149, 161, 90 S.Ct. 1930,26 LE.2d 489. J.S. admitted to Jones that he had oral sex with K.K. on two different occasions and that he later had sexual intercourse with her. His written statement also indicates that he had vaginal intercourse and fellatio with K.K. Although Jones's report apparently provided specific dates for the offenses, K.K.'s testimony indicated that all of the sexual conduct occurred before school began on August 23, 2006, and she spoke with Jones about the sexual conduct on August 30, 2006, prior to her thirteenth birthday. Finally, we note that this case was tried to the judge, not a jury, and we presume that the court considered only relevant, material, and competent evidence unless it affirmatively appears to the contrary. State v. Sieng, Clark App. No. 2003-CA-35,2003-Ohio-7246, ¶ 32. The trial court's judgment finding J.S. to be responsible for the rapes indicates that the court relied upon K.K.'s testimony and J.S.'s admissions and not the inadmissible hearsay. Accordingly, although we find that the trial court committed error when it allowed Jones to testify to prior statements by K.K., that error was harmless beyond a reasonable doubt.
 {¶ 47} The second assignment of error is overruled. *Page 11 
 {¶ 48} I. "APPELLANT'S DELINQUENCY ADJUDICATIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 49} In his first assignment of error, J.S. claims that his delinquency adjudication was against the manifest weight of the evidence.
 {¶ 50} "When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact `clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, 678 N.E.2d 541, citing State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact sees and hears the witnesses and is particularly competent to decide `whether, and to what extent, to credit the testimony of particular witnesses,' we must afford substantial deference to its determinations of credibility.State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288. `Contrastingly, the decision as to which of several competing inferences, suggested by the evidence in the record, should be preferred, is a matter in which an appellate judge is at least equally qualified, by reason and experience, to venture an opinion.' Id. A judgment should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. Martin,20 Ohio App.3d at 175." State v. Gabriel, 170 Ohio App.3d 393, 2007-Ohio-794,867 N.E.2d 474, ¶ 78.
 {¶ 51} On appeal, J.S. asserts that the state failed to prove beyond a reasonable doubt that J.S. engaged in sexual conduct with another, not his spouse, *Page 12 
who was less than thirteen years of age. He asserts that K.K. gave three inconsistent statements about her sexual activity with J.S. — a written statement that differed from her oral statement to Jones, which differed from her testimony at trial. J.S. thus argues that "the facts are uncertain and the evidence unreliable."
 {¶ 52} Upon review of the record, we find J.S.'s argument to be without merit. K.K. testified at trial that she performed fellatio on J.S. on several occasions in the spring and summer of 2006, and that she had sexual intercourse with J.S. on the last occasion during the summer of 2006. Although her statements varied from her testimony to some degree, she consistently stated that she performed oral sex on J.S. Moreover, her testimony and her statements indicate that these incidents occurred prior to August 31, 2006, when she turned thirteen. Significantly, J.S. admitted in his written statement that K.K. performed oral sex on him and that they engaged in sexual intercourse about one month later. J.S. admitted to two instances of fellatio in his interview with Jones. Although J.S.'s father testified that J.S. could not have engaged in sexual activity with K.K. on August 18, 2006 when J.S. was with him, J.S.'s father admitted that he could not account for J.S.'s whereabouts on other dates in that time period. Based on the evidence, the trial court did not lose its way when it found that J.S. was responsible for acts that would constitute four counts of rape if committed by an adult.
 {¶ 53} The first assignment of error is overruled.
 {¶ 54} The judgment of the trial court will be affirmed.
 BROGAN, J. and DONOVAN, J., concur. *Page 13 
(Hon. Anthony Valen retired from the Twelfth District Court of Appeals sitting by assignment of the Chief Justice of the Supreme Court of Ohio). *Page 1