OPINION
{¶ 1} A.B., a minor child, appeals from an adjudication of delinquency and his commitment to the Ohio Department of Youth Services (ODYS). A.B. contends that his Sixth Amendment right to counsel was violated due to the ineffectiveness of his trial counsel. A.B. further contends that the adjudication of delinquency is against the *Page 2 
manifest weight of the evidence.
 {¶ 2} We conclude that trial counsel was not ineffective. We also conclude that the adjudication of delinquency is not against the manifest weight of the evidence. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} In March 2007, Officer George of the Dayton Police Department filed a complaint alleging that A.B. was delinquent due to the following violations: burglary; carrying a concealed weapon; having a weapon under disability; and obstructing official business. These charges arose from events that took place on March 23, 2007. On that date, Dayton Police Officers Doug George and Jason Barnes were investigating a call regarding recent shots that had been fired on the 1000 block of Danner Avenue. A similar complaint had also been received the previous evening in connection with shots at 1200 Danner, which was only a few blocks away. Barnes drove to the location and George was sitting in the passenger seat of the police cruiser.
 {¶ 4} The officers arrived on Danner Avenue around 8:00 p.m. There was a slight, or misty rain, and it was dusk. The officers observed an African-American male in a black hooded sweatshirt (later identified as A.B.) leaning against a wrought iron fence near the 1000 block. The only other individual in the area was an individual wearing a white shirt, who was located about 75 feet away, in a courtyard. Barnes wanted to see why A.B. was hanging around in the rain, so he stopped the cruiser and got out. When Barnes opened his door, A.B. began running and Barnes began to chase him. George could see the chase from the cruiser. Both Barnes and George testified that A.B. ran *Page 3 
down the sidewalk and into an apartment located at 1034 Danner.
 {¶ 5} Barnes saw A.B. open the door to the apartment and slip inside. As Barnes ran up to the door, he could hear the deadbolt being locked. Barnes kicked in the door and was able to enter the premises in time to see A.B. running up the stairs. When Barnes got to the top of the stairs, he saw A.B. shut the door of the first bedroom to the left. Barnes pushed on the door, but there was body weight on the other side of the door. Eventually, with George's help, the officers were able to push the door open. They then found A.B. behind the door.
 {¶ 6} A.B. was placed on the bed and handcuffed, and was taken into custody. The police saw another African-American male and a woman in the apartment where A.B. was apprehended, but the woman claimed not to know A.B. The police never learned the identity of the other male in the apartment. The officers testified that they recognized A.B. as the individual who had been standing near the wrought iron fence based on his clothing and appearance. Barnes indicated that A.B. was not out of his sight, other than for the five or ten seconds it took to kick open the door to the apartment.
 {¶ 7} When George went back outside to the cruiser, he saw a black nine-millimeter pistol lying on the ground exactly where A.B. had been standing. No one else was outside at that time. The pistol was later tested and was found to be operable.
 {¶ 8} At the police station, A.B. gave the officers a false name — that of A.B.'s fourteen-year-old brother, E.B. A.B. concealed his true identity because he was aware that he had an outstanding warrant for a parole violation. After receiving Miranda warnings, A.B. orally confessed and gave a written statement, admitting that he *Page 4 
possessed the gun.
 {¶ 9} At the adjudication hearing, A.B. contended that all the police witnesses were lying about what had happened and that he was actually asleep in the apartment on Danner Avenue at the time of the incident. A.B. denied making any statements to the police, claimed he had asked for an attorney, and stated that he had refused to answer questions.
 {¶ 10} A.B. also claimed that some of the handwriting on the written statement was not his. A.B. even testified that the police had concocted the fact that he had given them his brother's name. However, because A.B.'s mother testified that the brother, E.B., did not have a criminal record, there is no explanation of how the police would have known E.B.'s name — nor is there a logical reason why the police would have created more work for themselves by assigning a false name to a juvenile. A.B. did admit giving the police a false identity and he also admitted that some of the handwriting on the written statement was his own. A.B. only specifically denied writing one statement out of seven, and the brother's name or initials were written next to several other statements.
 {¶ 11} After hearing the evidence, the judge found that A.B. was not credible. The trial court, therefore, found that the State had established the three remaining charges.[1]
 {¶ 12} At a subsequent dispositional hearing, the court ordered A.B. into the *Page 5 
custody of the ODYS for a minimum of six months on each of the two felony counts, with the sentences to be served consecutively because of A.B.'s failure to comply with rules and regulations in the community and the involvement of weapons. The court also ordered that the maximum term of confinement would be until A.B. reached age 21.
 {¶ 13} A.B. now appeals from the adjudication of delinquency and his commitment to ODYS.
 II {¶ 14} A.B.'s First Assignment of Error is as follows:
 {¶ 15} "APPELLANT'S SIXTH AMENDMENT RIGHT TO COUNSEL WAS VIOLATED IN THAT APPELLANT'S TRIAL COUNSEL WAS INEFFECTIVE."
 {¶ 16} Under this assignment of error, A.B. contends that trial counsel was ineffective because he failed to file a motion to suppress the confession A.B. made at the police station. This issue was raised at the adjudicatory hearing, when A.B. testified that he had invoked his right to counsel, could not read paperwork that was given to him, did not understand the rights that were read to him, did not understand the questions asked of him, and was high on marijuana when he was interviewed. A.B. contends that if trial counsel had filed a motion to suppress, a reasonable probability existed that the motion would have been successful. A.B. further contends that if the motion to suppress had been granted, there would have been no evidence linking him with the weapon found on the 1000 block of Danner Avenue.
 {¶ 17} "To prevail on a claim of ineffective assistance of trial counsel, a defendant must show both deficient performance, and resulting prejudice." In re J.W., *Page 6 
Montgomery App. No. 19869, 2003-Ohio-5096, at]} 8, citing Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.
 {¶ 18} "To show deficiency, the defendant must show that counsel's representation fell below an objective standard of reasonableness. * * * Trial counsel is entitled to a strong presumption that his conduct falls within the wide range of effective assistance. * * * The adequacy of counsel's performance must be viewed in light of all of the circumstances surrounding the trial court proceedings. * * * Hindsight may not be allowed to distort the assessment of what was reasonable in light of counsel's perspective at the time.
 {¶ 19} "Even assuming that counsel's performance was ineffective, the defendant must still show that the error had an effect on the judgment.* * * Reversal is warranted only where the defendant demonstrates that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." State v.Jackson, Champaign App. No. 2004-CA-24, 2005-Ohio-6143, at]} 29-30 (citations omitted).
 {¶ 20} Trial counsel's performance in the present case was not deficient. A motion to suppress had little probability of succeeding, because the trial court did not find A.B.'s testimony credible. In fact, the court said so when it found A.B. delinquent. There was also substantial evidence of proper procedure by Detective Olinger, who administered the Miranda warnings and took A.B.'s statement. Notably, Olinger's testimony contradicted A.B.'s account of what occurred.
 {¶ 21} Olinger testified that he advised A.B. of his rights and asked A.B. if he understood. A.B. said that he did. A.B. said he understood the waiver of rights and *Page 7 
signed the waiver. Olinger also testified that he wrote out questions and that A.B. wrote down his answers, initialed the answers, and signed the forms. A.B. also made oral statements to Olinger, including the fact that A.B. had found the gun lying on Riverside Street, and that he was going to sell the gun for money. A.B. even corrected the written statement, which indicated that the gun was in A.B.'s waistband; A.B. noted instead that the gun was in his front pocket.
 {¶ 22} Furthermore, even if A.B.'s statements had been suppressed, there was still ample evidence connecting A.B. to the gun. A.B. was in a police officer's sight nearly every second from the time he began to run, and both officers positively identified A.B. as the individual who ran from the scene. In addition, the officer who found the gun stated that the gun was found in the very spot where A.B. had been standing only moments before. The night was rainy and no one was outside, except one other individual who was 75 feet away. It requires a major suspension of disbelief to conclude that an individual located 75 feet away would run to the precise spot where another individual had been standing before being chased by the police, and drop a loaded gun at that spot. Therefore, even if trial counsel had been deficient in failing to file a motion to suppress, any error would have been harmless.
 {¶ 23} The First Assignment of Error is overruled.
 III {¶ 24} A.B.'s Second Assignment of Error is as follows:
 {¶ 25} "THE TRIAL COURT VIOLATED APPELLANT'S RIGHT TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENT TO THE UNITED *Page 8 
STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION WHEN IT ADJUDICATED HIM DELINQUENT WHEN THE FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 26} A.B. contends under this assignment of error that there is no credible evidence linking the weapon to A.B. because A.B. was never seen in possession of the weapon, no fingerprint evidence was taken, and A.B. testified that the gun was never in his possession. A.B. also contends that he cannot be convicted on his inculpatory statement alone without some independent evidence.
 {¶ 27} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `"thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. * * *Tibbs, 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also,State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219,485 N.E.2d 717, 720-721 (The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.')." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, 678 N.E.2d 541, 546-47.
 {¶ 28} We afford substantial deference to the factfinder's credibility determinations because the trier of fact "sees and hears the witnesses and is particularly competent to decide `whether, and to what extent, to credit the testimony of *Page 9 
particular witnesses.'" In re J.S., Montgomery App. No. 22063,2007-Ohio-4551, at ]} 50 (citation omitted). Accord, In re J.B., Montgomery App. No. App. No. 21852, 2007-Ohio-4335, at ]} 36 ("credibility of the witnesses and the weight to be given to their testimony were matters for the trier of facts to decide. * * * The trier of facts did not lose its way simply because it chose not to believe" the testimony of a witness who testified for the defense.)
 {¶ 29} In the present case, the trial court did not have to believe A.B.'s account of events. The court was entitled instead to rely on the testimony of the police officers and the detective who took A.B.'s statement. Furthermore, as we have noted, A.B.'s inculpatory statement was not the only evidence of his guilt. There was ample evidence in the form of the testimony of the arresting officers to connect A.B. with the gun.
 {¶ 30} A.B.'s Second Assignment of Error is overruled.
 IV {¶ 31} Both of A.B. `s assignments of error having been overruled, the judgment of the trial court is Affirmed.
WOLFF, P.J., and GRADY, J., concur.
[1] The charge of burglary was dismissed without prejudice at the beginning of the proceedings, the occupant of the apartment, Ms. Madison, having failed to appear for the adjudicatory hearing. *Page 1