[Cite as *State v. Sigurani*, 2025-Ohio-1573.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 30266 |
| | : | |
| v. | : | Trial Court Case No. 2024-CRB-2323 |
| | : | |
| VERTI SIGURANI | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on May 2, 2025

. . . . . . . . . . .

RICHARD L. KAPLAN, Attorney for Appellant

STEPHANIE L. COOK, Attorney for Appellee

. . . . . . . . . . . .

HUFFMAN, J.

{¶ 1} Verti Sigurani appeals from his convictions for obstructing official business, failure to disclose one's personal information, and criminal trespass. For the following reasons, the judgment of the trial court will be affirmed.

**Procedural History**

**{¶ 2}** Sigurani was arrested on July 31, 2024, and charged by complaint on August 1, 2024, in Dayton Municipal Court with obstructing official business, failure to disclose one's personal information, and criminal trespass. He pled not guilty the same day. At his arraignment, Sigurani signed a form that informed him of his rights, including: "(5) **The right to trial by judge or jury.** If I want a trial by jury, I must file a written jury demand pursuant to Criminal Rule 23." Counsel was appointed for Sigurani on the date of his arraignment, and the matter was set for a bench trial on August 14, 2024. The scheduling order stated that no continuance would be considered unless requested in writing and filed no less than 48 hours before the time set for trial. Sigurani's attorney entered an appearance on August 5, 2024.[1]

**{¶ 3}** Sigurani was tried on August 14 and was found guilty of each of the offenses. The same day, he was sentenced to jail terms for each offense, with credit for 15 days and the remainder of each sentence suspended. The court also imposed a post-conviction no contact order that required Sigurani to have no contact with the complainant in the criminal trespass for three years and ordered him not to possess any deadly weapons during the period of the order.

**{¶ 4}** Sigurani appeals.

### Assignments of Error and Analysis

**{¶ 5}** Sigurani raises two assignments of error on appeal. His first assignment of error is:

THE TRIAL COURT'S REFUSAL TO GRANT A CONTINUANCE TO THE

---

[1] Defense counsel's order of appearance is time-stamped August 5, 2024, at 2:09 p.m., although the trial court's docket reflects that it was filed and imaged the following day.

DEFENDANT SO TRIAL COUNSEL COULD INVESTIGATE MR. SIGURANI'S CASE AND PREPARE A DEFENSE WAS ARBITRARY, AN ABUSE OF DISCRETION AND A VIOLATION OF MR. SIGURANI'S RIGHT TO COUNSEL AND DUE PROCESS.

{¶ 6} Sigurani contends that the trial court violated his rights by denying his request for a continuance on the day of trial

{¶ 7} On the day the bench trial was scheduled, the parties appeared before the judge, and defense counsel requested a continuance; although the context is somewhat unclear from the parties' initial discussion with the court, we can glean from the transcript that a prosecutor who had been previously involved with the case, "Mr. Gravunder," had left his employment the day before trial. The attorney who appeared with Sigurani on the day of trial had consulted with Gravunder at some point and represented to the court that they had "discussed . . . calling off the witnesses," i.e. not proceeding with trial that day. Rather, defense counsel's plan was to request bond and ask for the trial to be rescheduled. Defense counsel apparently had believed that Gravunder would "call off the witnesses," but he had not done so. Defense counsel also represented that she and Sigurani had not gotten very far in building a defense, because Sigurani had been in custody since the arraignment. Counsel also made several references to potentially having a jury trial in the future.

{¶ 8} In response, the prosecutor did not dispute the representations of defense counsel but stated that no information about any plan to delay the trial had been communicated to her, the witnesses had been called and were present, Sigurani had

rejected a plea offer, and she would prefer to go ahead with the trial as scheduled. Defense counsel then reiterated the request for a continuance for a pretrial or trial, "so that we have time left."

{¶ 9} The trial court denied the request for a continuance. It noted that the case had been expedited, that no jury demand had been filed, and that the State was ready to proceed.

{¶ 10} Sigurani asserts that the court abused its discretion in denying his request for a continuance because of the lack of a jury demand and because the State wanted to proceed with the trial. He argues that he had been unable to timely file a jury demand pursuant to Crim.R. 23(A), because the rule requires the filing of a jury demand ten days before trial, and his counsel had not yet entered an appearance by that time. Sigurani further argues that there would have been no inconvenience to the State, because the case was only 15 days old, and the prior prosecutor, Gravunder, told defense counsel he was "calling off" the witnesses. Sigurani suggests that, because the prosecutor who was present the day of trial did not challenge defense counsel's assertion that Gravunder was supposed to cancel the witnesses, that prosecutor "accepted that her office had promised" defense counsel that the case would not be tried the next day and the entire prosecutor's officer should have been bound by Gravunder's alleged representation. Sigurani also claims that he was prevented from consulting and preparing for trial with his attorney by the denial of a continuance.

{¶ 11} In our view, the trial court reasonably refused to grant a continuance on the day of trial. "Courtroom trial dates are a scarce resource, and trial counsel have an

obligation to keep trial judges informed, on a timely basis, of circumstances that impact the trial judge's decision how best to allocate that resource." *State v. Mulligan*, 2003-Ohio-782, ¶ 37 (2d Dist.). The grant or denial of a continuance is entrusted to the broad discretion of the trial judge, and an appellate court may not reverse the denial of a continuance unless there has been an abuse of discretion. *State v. Dingman*, 2024-Ohio-3327, ¶ 25 (2d Dist.), citing *State v. Miller*, 2005-Ohio-4203, ¶ 45 (2d Dist.), citing *State v. Unger*, 67 Ohio St.2d 65, 67 (1981). "Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary or unconscionable. *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990), citing *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87 (1985).

> " 'There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.' " . . . In evaluating a motion for a continuance, the trial court should consider (1) the length of the requested delay, (2) whether other continuances have been requested and granted, (3) the inconvenience to the litigants, witnesses, opposing counsel, and the court, (4) whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived, (5) whether the defendant contributed to the circumstance that gives rise to the request for a continuance, and (6) other relevant factors, depending on the unique facts of each case.

(Citations omitted.) *Dingman* at ¶ 26. "[N]ot every denial of a request for more time . . . violates due process . . . ." *State v. Rash*, 111 Ohio App.3d 351, 354 (2d Dist. 1996).

**{¶ 12}** Crim.R. 23(A), which is cited by Sigurani, governs the wavier of a defendant's right to have a jury trial. With respect to a petty offense,[2] it states that, "where there is a right of jury trial, the defendant shall be tried by the court unless he demands a jury trial. Such demand must be in writing and filed with the clerk of court not less than ten days prior to the date set for trial, or on or before the third day following receipt of notice of the date set for trial, whichever is later." The rule further states that "[f]ailure to demand a jury trial as provided in this subdivision is a complete waiver of the right thereto."

**{¶ 13}** We find no abuse of discretion and that no basis exists to find a denial of representation as asserted by Sigurani. Defense counsel had at least constructive notice of the scheduled trial date and of the court's written admonishment that any request for a continuance must be in writing at least 48 hours before the time set for trial no later than the date of her appearance, August 5, 2024 (if not earlier when she was appointed). Even if we assume that defense counsel did not learn of the trial date in time to comply with Crim.R. 23, she did not explain her failure to timely request a continuance for purposes of complying with that rule to avoid waiver.

**{¶ 14}** Further, defense counsel equivocated regarding Sigurani's actual desire for a trial by jury, noting that she wanted to obtain Sigurani's release on bond "so that we

---

[2] "A 'petty offense' is defined in Crim.R. 2(D) as 'a misdemeanor other than a serious offense.' A 'serious offense' is defined in Crim.R. 2(C) as 'any felony, and any misdemeanor for which the penalty prescribed by law includes confinement for more than six months.' " *State v. Bell*, 2017-Ohio-7512, ¶ 13 (2d Dist.).

could *potentially, maybe* have a jury trial" (emphasis added) and that she wanted the continuance "to set it for a pretrial and then potentially set it for a trial and possibly a jury trial after that."

{¶ 15} Analysis of the factors set forth in *Dingman,* 2024-Ohio-3327 (2d Dist.), also supports our conclusion that the municipal court did not abuse its discretion or unreasonably move forward with the trial in the face of justifiable delay. Defense counsel did not request a specific period of time for the continuance; rather, the request was vague, with defense counsel requesting "some time to figure out defense's case." Although defense counsel represented that she and Gravunder had previously agreed to a delay in the proceedings, she offered no evidence of such an agreement, and the prosecutor stated that she was unaware of any such agreement and was ready to proceed. Moreover, the State's witnesses were present, such that a last-minute continuance would have inconvenienced them and the court.

{¶ 16} There was also no basis to find that the requested delay was other than dilatory; defense counsel was slow to act, waiting until the day set for trial to seek a continuance, while stating that she had not "been able to actually get super far with the actual case defense wise" due to Sigurani's incarceration. Defense counsel did not explain why she was seemingly unable to confer with Sigurani at the jail or to request a timely continuance on that basis. (Nothing in the record suggests that Sigurani himself contributed to the circumstances giving rise to the requested continuance.) Under the circumstances in this case, particularly the reasons presented to the trial court at the time of the request for a continuance, we are unpersuaded that the trial court abused its

discretion. We are also unpersuaded by Sigurani's strained suggestion that the prosecutor's office should have been bound by the prior prosecutor's alleged agreement to delay the trial, which was evidenced only by defense counsel's statements.

{¶ 17} Sigurani's first assignment of error is overruled.

{¶ 18} Sigurani's second assignment of error is:

THE STATE'S EVIDENCE ON ALL THREE CHARGES WAS INSUFFICIENT AND AGAINST THE WEIGHT OF THE EVIDENCE, THEREFORE THE CONVICTIONS SHOULD BE REVERSED.

{¶ 19} Sigurani contends that his convictions were supported by insufficient evidence and were against the manifest weight of the evidence. Before analyzing this assignment of error, we will review the evidence adduced at trial.

{¶ 20} The complainant in the criminal trespass offense, Joshua Desmond, testified that he was the manager of an apartment building with addresses of 301 to 309 Troy Street and 1217 and 1219 Kiefer Street in Dayton. Desmond was acquainted with Sigurani, who had been working at Desmond's father's farm. According to Desmond, Sigurani had been "originally picked up" by Desmond's father in early July and had stayed at Desmond's apartment building for a night at that time. Then, Sigurani went to Desmond's father's house to do work and stay in a camper; Desmond saw Sigurani occasionally. Then, in late July, Desmond was told by his father that Sigurani was no longer welcome because of an altercation the previous day. Sigurani went to the apartment building; he was told by Desmond's father that he was allowed to stay for one night and was offered $100 "to catch a bus." The next day, Wednesday afternoon (July

31, 2024), Desmond and his father told Sigurani that he (Sigurani) needed to move on and was no longer welcome. In other words, according to Desmond, Sigurani was trespassed from the apartment building; he was told he had to leave multiple times. Desmond testified that Sigurani did not have a deposit or a lease at any of the apartment units.

{¶ 21} According to Desmond, Sigurani responded that it was up to him (Sigurani) when he was going to vacate the apartment. The conversation continued for 10 to 15 minutes. Desmond then called the police, and a Mediation Response Unit ("MRU") arrived. Desmond overheard the conversation between MRU and Sigurani; he hoped that the mediators would be able to talk him into leaving on his own, but Sigurani, who was in the apartment, shut the door, stopped communication, and said "call the police."

{¶ 22} The police were contacted by MRU, and Desmond waited for them to arrive. Desmond explained the situation to the responding officers, and he observed them speak to Sigurani from a distance. Desmond still hoped that Sigurani would leave on his own accord without being arrested. Desmond stated that, although his father had allowed Sigurani to stay one night, as the manager of the building, he (Desmond) had the authority to make Sigurani leave.

{¶ 23} Desmond testified that he also went to the Safety Building downtown to speak to a prosecutor, Gravunder, and that he was referred to the Dayton Municipal Court. He filed a complaint for criminal trespass against Sigurani on August 1, 2024, and he identified this document at trial.

{¶ 24} Officer Joshua Blankley of the Dayton Police Department testified that on

July 31, 2024, he responded to the area of 301 Troy Street as requested by MRU as a crisis intervention trained officer ("CIT"). Officer Terrell Moore, another CIT, also arrived. According to Blankley's testimony, Sigurani initially stated that he had been told by another police officer that if he resided somewhere for two weeks, he had "residency." The officers walked Sigurani across the street to provide some separation the MRU and "one of the stake holders from the property," then they tried to "work with" Sigurani. Blankley stated that Desmond's father informed the officers that Sigurani had been trespassed from the property. Blankley tried to talk to Sigurani and get his information to verify whether he was trespassing. Ultimately, Sigurani was informed by both the officers and the mediator that he needed to leave the property, and he was offered transportation to the Gateway Shelter, but Sigurani eventually "shut down and stopped communication all together."

{¶ 25} According to Blankley, before Sigurani "shut down," he had provided several different timeframes for his "residence" at the apartment, from two weeks to "some months." When Blankley asked him to provide a lease or any kind of documentation, Sigurani claimed he had evidence but was never able to provide it, despite being given an opportunity to retrieve it. He stated that it was unclear what Sigurani meant by "evidence."

{¶ 26} Regarding the alleged trespass, Officer Blankley testified that Desmond had provided Sigurani's name. Blankley ran the name through law enforcement computer systems and got no "returns" that provided him with a Social Security number, date of birth, or anything else that could be used to further identify Sigurani. Blankley testified

that, in the law enforcement context, he could not simply accept an individual's statement as to his or her identification; some documentation identifying that individual was required. After the computer check, Sigurani was given an additional opportunity to provide identifying information which would allow the officers to confirm whether he had been trespassed or was then trespassing on the property. Blankley decided to arrest him for criminal trespass when he continued to refuse to leave the property that day. Sigurani was booked into the jail as a "John Doe"; several hours later, an FBI fingerprint database confirmed his identity.

{¶ 27} Blankley testified that Sigurani's refusal to cooperate or to leave the premises had obstructed Blankley's ability to perform his duties. He stated that, if Sigurani had provided his identification information, the officers could have resolved the trespassing issue more quickly and easily and moved forward with finding Sigurani a new residence or at least getting him off the property. Blankley was on scene with Sigurani for 30 to 45 minutes, and then once Sigurani's identity had been confirmed at the jail, Blankley, who had resumed routine patrol, had to return to the jail to update his written report and create a new booking under the proper identification.

{¶ 28} On cross-examination, Blankley reiterated that he had been given Sigurani's first and last name in the call comments from MRU, but no address, date of birth, or Social Security number, so there "was nothing to corroborate that name," notwithstanding his search in state, local, and nationwide law enforcement databases. After the FBI database returned a match, Blankley learned that Sigurani was a resident of Arizona, and Blankley was able to enter his address, Social Security number, and date

of birth into the booking. Blankley was not able to confirm a previous criminal trespass complaint. On redirect, Blankley stated that Sigurani had been required by law to provide his name and date of birth and failed to do so. The August 1, 2024 complaint for criminal trespass signed by Desmond against Sigurani was admitted into evidence as State's Exhibit 1.

{¶ 29} Defense counsel moved for an acquittal. She argued that Blankley had been provided with Sigurani's name, and there had been "no delay or obstruction." Counsel asserted that there was no evidence presented that Sigurani had ever been trespassed from the property previously. The court denied the motion and proceeded to find Sigurani guilty on all three charges.

{¶ 30} Sigurani makes several points in support of his sufficiency and manifest weight arguments. Regarding the trespass offense, Sigurani asserts that "he had privilege as a tenant to be on the property," and that Desmond's father had brought him to the property and given him permission to stay. Regarding failure to disclose his identification, Sigurani contends that, because he "was not detained and was free to go," he was not under any obligation to provide identifying information. Finally, regarding obstructing official business, Sigurani asserts that he committed no overt act, citing *State v. Prestle,* 2005-Ohio-2536 (2d Dist.). According to Sigurani, the charge was based upon his alleged failure to disclose his name, even though the officers knew his name and had in fact run a computer check which revealed nothing; he contends that Blankley "chose" to book Sigurani as a John Doe, and thus it was the officer's decision and not Sigurani's action which allegedly caused more work for the officer.

{¶ 31} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 32} Our analysis is different when reviewing a manifest-weight argument. When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

{¶ 33} It is well-settled that the "primary question of witness credibility lays with the finder of facts." *In re A.E.*, 2008-Ohio-1864, ¶ 15 (2d Dist.), citing *State v. DeHass*, 2008-Ohio-1864, paragraph one of the syllabus. "The factfinder may accept or reject all, part, or none of the testimony of each witness." *Id.*, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964). " 'Because the trier of fact sees and hears the witnesses and is particularly

competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility.' " *Id.*, quoting *In re J.S.*, 2007-Ohio-4551, ¶ 50 (2d Dist.), quoting *State v. Lawson*, 1997 WL 476684 (2d Dist. Aug. 22, 1997). An appellate court should not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *In re C.M.*, 2006-Ohio-3741, ¶ 41 (2d Dist.).

### 1. Failure to Disclose

**{¶ 34}** R.C. 2921.29(A)(1) states: "No person who is in a public place shall refuse to disclose the person's name, address, or date of birth, when requested by a law enforcement officer who reasonably suspects . . . [t]he person is committing, has committed, or is about to commit a criminal offense." Officer Blankley testified that he and Officer Moore had responded to the scene after being contacted by MRU on the report of a criminal trespass, and Desmond had confirmed that Sigurani was trespassing. Sigurani refused to leave the property with no evidence of a legitimate basis to be there. Thus, the officers reasonably suspected that Sigurani was committing or had committed a criminal offense. Sigurani refused to disclose his name, address, or date of birth when Blankley repeatedly asked him to do so. Based on this evidence, Sigurani's conviction for failure to disclose was supported by sufficient evidence and not against the manifest weight of the evidence.

### 2. Obstructing Official Business

**{¶ 35}** R.C. 2921.31 proscribes obstructing official business and states: "No

person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." " 'Ohio courts have consistently held that in order to violate the obstructing official business statute a defendant must engage in some affirmative or overt act or undertaking that hampers or impedes a public official in the performance of the official's lawful duties.' " *State v. Harrell*, 2007-Ohio-4550, ¶ 12 (2d Dist.), quoting *State v. Prestel*, 2005-Ohio-5236, ¶ 16 (2d Dist.).

{¶ 36} In *State v. Folley*, 2011-Ohio-4539 (2d Dist.), law enforcement officers responded to an apartment building on a complaint of a criminal trespass. Folley was involved in an argument and creating a disturbance outside the building. *Id.* at ¶ 2. Apartment management wanted her removed because she refused to leave on her own. After an officer told Folley to leave, she began to walk toward the entrance to the building, stating that she did not have to leave; she was then arrested for criminal trespass and placed in a cruiser. *Id.* at ¶ 3. She refused to provide any personal information. *Id.* The officers eventually obtained her identifying information from the apartment leasing office. Folley was convicted of obstructing official business and failure to disclose her identity, and she appealed. *Id.* at ¶ 4.

{¶ 37} As to the obstructing official business offense, Folley argued on appeal that her refusal to provide the officers with any personal information, standing alone, could not form the basis of a conviction for obstructing official business; the State asserted that Folley's affirmative act had been attempting to enter the apartment building after being

told to leave. *Id.* at ¶ 10. The State relied on *Prestle*, 2005-Ohio-2536 (2d Dist.), but we distinguished that case, noting that the defendant in *Prestle* had not been under arrest at the time that he refused to provide his personal information and had not been suspected of criminal activity. *Id.* But Folley had refused to provide her personal information to officers *after* she was arrested for criminal trespass and after she attempted to walk toward the entrance of the apartment building, at which point the officers both had already directed her to leave the property. *Id.* at ¶ 11. We concluded that, under those circumstances, "Folley's refusal to provide identifying information was an affirmative act which clearly interfered with the officers' ability to perform their duties upon the trespass arrest and delayed their clearing of the call." *Id.*

{¶ 38} The same is true in this case. Officers arrested Sigurani for the criminal trespass after spending 30-45 minutes asking him for proof of his residence at the building and, in the absence of such evidence, trying to get him to leave. Thereafter, he failed to disclose his information as required by law for someone suspected of criminal activity. His refusal to provide his identifying information before and after his arrest interfered with Blankley and Moore's ability to perform their duties and delayed their ability to clear the call.

{¶ 39} We note that Adm.Code 5120:1-8-01, which sets forth the standards to which all jails must adhere in the reception and release of inmates, states that a booking and identification record will be made of every commitment that includes the name, the date of birth, the home address and telephone number, and the Social Security number of each inmate. Adm.Code 5120:1-8-01(C)(2),(5),(9),(11). Blankley had to initially

enter Sigurani into the jail as a "John Doe" and subsequently interrupt his patrol duties to return to the jail to update his written report and enter Sigurani's correct information because Sigurani had not provided the information initially. Under these circumstances, Sigurani's conviction for obstructing official business was supported by sufficient evidence and was not against the manifest weight of the evidence.

### 3. Criminal Trespass

**{¶ 40}** For criminal trespass, Sigurani was convicted of violating R.C. 2911.21(A)(3), which states: "No person, without privilege to do so, shall . . . [r]ecklessly enter or remain on the land or premises of another, as to which notice against unauthorized access or presence is given by actual communication to the offender . . . ." " 'Privilege,' as that term is utilized in Ohio's criminal statutes, 'means an immunity, license, or right conferred by law, or bestowed by express or implied grant, or arising out of status, position, office, or relationship, or growing out of necessity.' " *State v. Clelland*, 83 Ohio App.3d 474, 490 (4th Dist. 1992), quoting former R.C. 2901.01(L), now R.C. 2901.01(A)(12). *See also State v. Johnson*, 2002-Ohio-6471, ¶ 7 (11th Dist.) (finding an oral advisement sufficient to put the defendant on notice where an officer testified that he had advised the defendant that he was banned from the property).

**{¶ 41}** Sigurani had been orally notified by Desmond, the MRU, and the responding police officers that his presence at the apartment building was not authorized. As such, "actual communication to the offender" about the trespass had occurred, and Sigurani nonetheless remained at the property, refusing to leave, until his arrest. Sigurani's conviction for criminal trespass was supported by sufficient evidence and was

not against the manifest weight of the evidence.

**{¶ 42}** The second assignment of error is overruled.

## Conclusion

**{¶ 43}** An abuse of discretion is not demonstrated in the denial of Sigurani's motion for a continuance, and his convictions were supported by sufficient evidence and not against the manifest weight of the evidence.   Accordingly, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .


TUCKER, J. and LEWIS, J., concur.