OPINION
{¶ 1} Defendant-Appellant Martin Jackson appeals from his conviction and sentence for one count of Possession of Cocaine and one count of Possession of Drug Paraphernalia. Jackson contends that the trial court should not have admitted evidence of his wife's 911 call to police, that the trial court violated Blakely v. Washington (2004), 542 U.S. 296,124 S.Ct. 2531, when it considered the results of a drug screening when sentencing him, that the verdict was against the manifest weight of the evidence and was not supported by sufficient evidence, and that he was denied the effective assistance of counsel.
 {¶ 2} We conclude that the trial court correctly ruled that Jackson's wife's 911 call reporting that her husband was smoking crack cocaine qualified as a present-sense-impression exception to the hearsay rule. We conclude that even if Blakely can have any application to a sentence consisting of a community control sanction, that issue was not preserved for appellate review. We conclude that Jackson's conviction is not against the manifest weight of the evidence, and is supported by the evidence in the record. Furthermore, even if Jackson's wife's 911 call to police were hearsay, and therefore inadmissible, that evidence would not have been obtained as a result of police conduct in violation of constitutional restrictions against unlawful search and seizure, the exclusionary rule would not apply, and therefore the extension of the exclusionary rule to the "fruit of the poisonous tree," which Jackson argues in this connection, would have no application. Finally, our review of the record leads us to conclude that Jackson's trial counsel was not ineffective. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} Defendant's wife, Mandy Jackson, called 911 to report that her husband was smoking crack cocaine in their house and that he was leaving the house with a crack pipe in his possession. She had made several similar calls to the police over the preceding months. She described her husband and his clothes to the dispatcher, and officers were sent to the residence. When they arrived in the area, they saw Jackson walking down the street. When they stopped Jackson, he backed up toward a building and dropped something shiny onto the ground. The officers promptly found a chrome tube crack pipe with crack inside. The officers arrested Jackson.
 {¶ 4} The officers returned to the home and spoke to Mandy, who was quite upset about her husband's persistent drug use. Because he refused her attempts to help him quit, she had resorted to reporting him to the police whenever he used drugs.
 {¶ 5} Jackson was indicted on one count of Possession of Cocaine and one count of Possession of Drug Paraphernalia. Prior to trial, Jackson moved to suppress the tape of his wife's 911 call, because the tape had not been turned over in a timely manner. The trial court overruled the motion, but did give Jackson additional time to prepare for trial. Mandy later chose not to testify against her husband at trial, and Jackson moved to exclude the tape, claiming spousal privilege. The trial court overruled the request. Following a jury trial, Jackson was found guilty as charged.
 {¶ 6} The trial court sentenced Jackson to three days in jail and three years of community control, with random drug screens. The court ordered that the first drug screen be done immediately. Later that day, after Jackson's drug screen indicated use of cocaine, despite his claims that he had not been using recently, the court ordered Jackson to serve an additional fourteen days in jail. From his conviction and sentence, Jackson appeals.
 II {¶ 7} Jackson's First Assignment of Error is as follows:
 {¶ 8} "THE TRIAL COURT ERRED, ABUSED ITS DISCRETION AND VIOLATED DEFENDANT'S CONSTITUTIONAL RIGHTS WHEN IT CONSIDERED AN INFORMAL DRUG TEST AS PART OF SENTENCING AND THEREFORE BASED ITS JAIL SENTENCE UPON FACTS NOT FOUND BY A JURY."
 {¶ 9} In his First Assignment of Error, Jackson offers a cursory two-sentence argument that the trial court impermissibly considered the positive drug screen when it imposed an additional fourteen days in jail without the jury deciding that issue. In support he cites Blakely v.Washington (2004), 542 U.S. 296, 124 S.Ct. 2531. However, because Jackson failed to raise this issue in the trial court, he has waived any right to present the issue on appeal.
 {¶ 10} Initially, we question whether Blakely is even applicable in a case, like this one, where community control is ordered rather than a maximum sentence. The Blakely Court stated, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury, and proved beyond a reasonable doubt." Some arguments have been made that a more-than-minimum sentence is subject to Blakely because of the finding required by R.C. 2929.14(B). But that division of the statute applies only if the sentencing court "elects or is required to impose a prison term on the offender." In this case, the court imposed a community control sanction that included a jail term, but no prison term. Therefore, the statutory requirement of a finding pursuant to R.C.2929.14(B) has no application in this case.
 {¶ 11} In any event, Jackson has waived any Blakely issue as a result of his having failed to raise it in the trial court. During the sentencing hearing, the trial court twice asked the defense and the State, before and after the drug screen, whether they "want[ed] anything else from this hearing." Both times the defense and the State indicated that nothing further was needed. Accordingly, even if Blakely would have any application in this case, where a community control sanction was imposed, we conclude that Jackson waived any argument by failing to raise it first in the trial court. State v. Austin (March 11, 2005), Montgomery App. No. 20445. Accordingly, Jackson's First Assignment of Error is overruled.
 III {¶ 12} Jackson's Second Assignment of Error is as follows:
 {¶ 13} "THE TRIAL COURT ERRED IN ALLOWING THE WIFE'S 911 CALL INTO EVIDENCE AS IT WAS HEARSAY AND VIOLATED THE MATRIMONIAL PRIVILEGE."
 {¶ 14} In his Second Assignment of Error, Jackson concludes that the trial court erred in allowing the tape of Mandy's 911 call to be admitted into evidence because it violated the spousal privilege. This argument fails for two reasons. First, the 911 call was not an inter-spousal communication within the contemplation of R.C. § 2317.02(D). The spousal privilege does not apply to statements made to or in the presence of a third party, such as the reporting of crimes to the police. Here the tape was of a conversation between Mandy and a police dispatcher, not with her husband.
 {¶ 15} Second, the tape was properly admissible as a present-sense impression, because Mandy's statement was "describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." State v. Tibbetts,92 Ohio St.3d 146, 158-59, 2001-Ohio-132. Therefore, the trial court did not abuse its discretion in admitting the 911 tape into evidence, and Jackson's Second Assignment of Error is overruled.
 IV {¶ 16} Jackson's Third Assignment of Error is as follows:
 {¶ 17} "THE TRIAL COURT'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND/OR SUPPORTED BY INSUFFICIENT EVIDENCE."
 {¶ 18} Jackson next argues that since the tape should not have been admitted into evidence, everything flowing from that tape was fruit of the poisonous tree and similarly inadmissible. Thus, without analysis, he purports to contest both the weight and sufficiency of the evidence. For the following reasons, we disagree with both claims.
 {¶ 19} As we discussed at length in State v. Hufnagel (Sept. 6, 1996), Montgomery App. No. 15563, two distinct standards apply to manifest weight and sufficiency of the evidence claims.
 {¶ 20} A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law. State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492:
 {¶ 21} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 22} In contrast, when reviewing a judgment under a manifest weight standard of review "[t]he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which evidence weighs heavily against the conviction." Thompkins, supra, quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 23} Here, it is undisputed that Jackson was in possession of a crack pipe that contained crack cocaine. In fact, Jackson admitted that he had been carrying the pipe, and that he knew that it contained crack. His defense was merely that the pipe did not belong to him. Nevertheless, Jackson readily admitted that he had recently smoked crack. Accordingly, there was sufficient evidence to justify putting the case before the jury, and there is no reason to believe that the jury lost its way in finding Jackson guilty.
 {¶ 24} To the extent that Jackson continues to argue that the 911 tape should have been suppressed, we again note that the tape was admissible because the call was not a private communication between spouses and because the tape contained Mandy's present-sense impression. Moreover, even if the tape itself had not been admissible at trial, there was nothing about the call that would have prevented the police from taking the report and acting on it. The fruit-of-the-poisonous-tree doctrine, as an expansion of the exclusionary rule invoked to deter police violation of constitutional rights, applies to situations where evidence has been obtained by the State in violation of rights secured by the Fourth Amendment to the Constitution of the United States, not where evidence, lawfully obtained, is inadmissible at trial due to the Rules of Evidence.
 {¶ 25} For these reasons, Jackson's Third Assignment of Error is overruled.
 V {¶ 26} Jackson's Fourth Assignment of Error is as follows:
 {¶ 27} "DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS, TRIAL BY AN IMPARTIAL JURY, AND EFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 28} Finally, Jackson maintains that he was denied the effective assistance of trial counsel because counsel failed to move to suppress the 911 tape and the evidence that flowed from it as fruit of the poisonous tree. He also argues that counsel should have argued that the initial drug test could not be used to determine his sentence and that counsel should have objected to the sentencing on the grounds ofBlakely, supra. Based upon our review of the record, we conclude that Jackson received effective assistance of trial counsel from an attorney who was doing the best he could without much ammunition to work with.
 {¶ 29} In order to prevail on a claim of ineffective assistance of counsel, the defendant must show both deficient performance and resulting prejudice. Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052. To show deficiency, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Id. Trial counsel is entitled to a strong presumption that his conduct falls within the wide range of effective assistance. Id. The adequacy of counsel's performance must be viewed in light of all of the circumstances surrounding the trial court proceedings. Id. Hindsight may not be allowed to distort the assessment of what was reasonable in light of counsel's perspective at the time. State v. Cook (1992), 65 Ohio St.3d 516, 524, 605 N.E.2d 70.
 {¶ 30} Even assuming that counsel's performance was ineffective, the defendant must still show that the error had an effect on the judgment.State v. Bradley (1989), 42 Ohio St.3d 136, 142, 538 N.E.2d 373. Reversal is warranted only where the defendant demonstrates that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id.
 {¶ 31} Jackson's arguments here center on his belief that counsel was remiss in failing to raise the issues discussed in his first three Assignments of Error. However, because those issues were not improperly decided, we cannot conclude that counsel's representation was ineffective. After all, trial counsel is under no obligation to perform futile acts. State v. Flors (1987), 38 Ohio App.3d 133, 139,528 N.E.2d 950.
 {¶ 32} Although we have not definitively held, in this opinion, that the Blakely sentencing issue, had it been raised, would have failed, we consider that to have been at best a rather fanciful argument in view of the fact that Jackson received a community control sanction for his offense. We certainly do not fault Jackson's trial counsel for having failed to raise this dubious issue.
 {¶ 33} Jackson's Fourth Assignment of Error is overruled.
 VI {¶ 34} All of Jackson's assignments of error having been overruled, the judgment of the trial court is affirmed.
Brogan, P.J., and Grady, J., concur.