[Cite as *State v. Baum*, 2017-Ohio-981.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 27190 |
| | : | |
| v. | : | Trial Court Case No. 2016-CR-1458 |
| | : | |
| ERIC BAUM | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 17th day of March, 2017.

. . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

THOMAS J. MANNING, Atty. Reg. No. 0059759, P.O. Box 751484, Dayton, Ohio 45475
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

**{¶ 1}** In this case, Defendant-Appellant, Eric Baum, appeals from his convictions and sentences for Criminal Trespass, a fourth-degree misdemeanor, and Possession of Criminal Tools, a first-degree misdemeanor. Baum was originally charged with Burglary, a third-degree felony, and Possession of Criminal Tools, a fifth-degree felony. The case was tried before a jury, which found Baum guilty of the lesser-included offense of Criminal Trespass. The jury also found Baum guilty of Possession of Criminal Tools, but declined to find that he possessed criminal tools with the intent to commit burglary. Accordingly, the trial court converted the charge to a first-degree misdemeanor, pursuant to R.C. 2923.24(C). The court then sentenced Baum to 30 days in jail for Criminal Trespass and 180 days in jail for Possession of Criminal Tools, and ordered that the sentences be served concurrently, for a total of 180 days in jail.

**{¶ 2}** Baum's counsel submitted a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), asserting that he could find no trial court error that was prejudicial to Baum's rights that could be argued on appeal. We notified Baum of his counsel's submission of an *Anders* brief, and of his ability to file additional assignments of error within 60 days. Because Baum has not filed any new assignments of error, this matter is ready for resolution.

I. Facts and Course of Proceedings

**{¶ 3}** According to the testimony at trial, Baum was found inside a residence on Perrine Street in Dayton, Ohio, at around 7:00 p.m. on May 9, 2016. Officers had been dispatched to the scene on a call about someone entering a vacant residence. No one

was living in the house at the time, but the owner, Mark Parker, lived in the area and was renovating the property. The prior owner had died, and Parker had purchased the property in March 2015, more than a year before the police were called.

{¶ 4} At the time of the break-in, the utilities were on, but the water had been turned off, and the bottom floor of the house was filled with construction materials. The arresting officer, John Griffin, also indicated that the second floor did not look as if it were capable of being lived in. When Griffin arrived, he saw a board propped up against a rear window. Griffin moved the board and entered the house. Eventually, Baum was found upstairs, in the attic, on top of a shed-like structure that housed a furnace. There were also three raccoons in the attic.

{¶ 5} When Baum was apprehended, he was wearing gloves, even though it was a nice May day. Baum also had a flashlight, a small folding knife inside his waistband, and a key chain with some type of multi-tool, almost like a Swiss Army knife.

{¶ 6} At trial, Baum testified in his own defense. He said that he lived in the area, near the house on Perrine. Baum saw Parker doing exterior painting on the Perrine house in 2015, but said that, to his knowledge, nothing had been done on the interior or exterior of the property since May 2015. Baum indicated that from November 2015 to April 2016, his own property had been burglarized dozens, perhaps "hundreds" of times, and that he went inside the Perrine Street house to see if any of his property was in there. He claimed to have previously seen some of his property on the outside of the Perrine home, specifically, his children's Halloween costumes. Baum admitted that he was trespassing in the house and did not have permission to be there. He denied that he possessed any of the items on his person with criminal purpose. Baum's explanation for

the gloves was that he had ringworm and wore the gloves almost constantly. He also carried a flashlight because the power had been turned off at his own home, and he needed the light to see inside his house. In addition, Baum stated that he collected pocketknives.

{¶ 7} As was noted, Baum was charged with Burglary, a third-degree felony, and Possession of Criminal Tools, a fifth-degree felony. After the close of evidence, the trial court instructed the jury on the lesser-included offense of Criminal Trespass. When the jury returned its verdict, it had found Baum guilty of Criminal Trespass, and Possession of Criminal Tools. However, the felony intent part of the Criminal Tools offense was left blank. As a result, the trial found Baum guilty of Criminal Trespass and the misdemeanor crime of Possession of Criminal Tools, and sentenced Baum as noted above.

## II.   Potential Assignments of Error

{¶ 8} Baum's counsel has identified four potential issues that could arguably support an appeal. These include: (1) whether the conviction is against the manifest weight of the evidence; (2) whether the trial court erred in overruling Baum's motion for acquittal under Crim.R. 29; (3) whether Baum's counsel was ineffective by failing to secure a time waiver to conduct additional discovery, including obtaining a transcript of the preliminary hearing in Dayton Municipal Court, and failing to file a request that Baum's competency be evaluated: and (4) whether the trial court erred in failing to grant a trial continuance or in failure to exclude a DVD of a cruiser camera after technical issues prevented Baum and his counsel from viewing the DVD in its entirety.

{¶ 9} "We are charged by *Anders* to determine whether any issues involving

potentially reversible error that are raised by appellate counsel or by a defendant in his pro se brief are 'wholly frivolous.' * * * If we find that any issue presented or which an independent analysis reveals is not wholly frivolous, we must appoint different appellate counsel to represent the defendant." *State v. Marbury*, 2d Dist. Montgomery No. 19226, 2003-Ohio-3242, ¶ 7, citing *Anders,* 386 U.S. at 744, 87 S.Ct. 1396, 18 L.Ed.2d 493. (Other citation omitted.)

{¶ 10} "*Anders* equates a frivolous appeal with one that presents issues lacking in arguable merit. An issue does not lack arguable merit merely because the prosecution can be expected to present a strong argument in reply, or because it is uncertain whether a defendant will ultimately prevail on that issue on appeal. An issue lacks arguable merit if, on the facts and law involved, no responsible contention can be made that it offers a basis for reversal." (Citation omitted.) *Id.* at ¶ 8.


A. Manifest Weight and Sufficiency of the Evidence

{¶ 11} As was indicated, Baum's first and second potential assignments of error alleged that his convictions were based on insufficient evidence and were against the manifest weight of the evidence.

{¶ 12} "A sufficiency-of-the-evidence argument challenges whether the state has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law." *State v. Cherry*, 171 Ohio App.3d 375, 2007-Ohio-2133, 870 N.E.2d 808, ¶ 9 (2d Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "The proper test to apply to the inquiry is the one set forth in paragraph two of the syllabus of *State v. Jenks* (1991), 61 Ohio St.3d 259,

574 N.E.2d 492: 'An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *Cherry* at ¶ 9.

{¶ 13} In contrast, "[w]hen a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, ¶ 8, quoting *Thompkins* at 387. "A judgment should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 14} "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citation omitted.) *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11. Consequently, "a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency."

(Citations omitted.)   *State v. Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15.

**{¶ 15}** At trial, Baum admitted that he had trespassed on the property without permission, so there can be no dispute that the guilty verdict for Criminal Trespass was supported by the weight of the evidence.   Regarding Possession of Criminal Tools, R.C. 2923.24(A) provides that "[n]o person shall possess or have under the person's possession any substance, device, instrument or article, with purpose to use it criminally." However, this crime "is not limited to possession with the purpose to commit theft; rather, it is broad enough to include any criminal purpose as the requisite intent."   *State v. Talley*, 18 Ohio St.3d 152, 156, 480 N.Ed.2d 439 (1985).

**{¶ 16}** Because the term " 'criminally' is not defined in the statute, * * * it must be given its plain and ordinary meaning."   (Citations omitted.)   *State v. Chappell*, 127 Ohio St.3d 376, 2010-Ohio-5991, 939 N.E.2d 1234, ¶ 17.   In *Chappell*, the court further stated that:

> The term "criminally" has varying definitions, including (1) according to criminal law, (2) in a criminal manner, i.e., in violation of law, and (3) reprehensively, disgracefully, or shamefully. Webster's Third New International Dictionary (1986) 537. The most relevant of the three definitions in today's case are "according to criminal law" and "in a criminal manner, i.e., in violation of law."   When either definition of "criminally" is used in the context of possessing criminal tools under R.C. 2923.24(A), the statutory language is susceptible of only one interpretation: the ordinary meaning of "criminally" is not limited to violations of Ohio law and plainly

encompasses violations of *any* law, including offenses defined under Ohio law and federal law.

(Emphasis sic.) *Id.* at ¶ 18.

{¶ 17} *Chappell* involved a charge of Possession of Criminal Tools, in which the State advised in a bill of particulars that "it intended to introduce evidence that the underlying felony was Chappell's purpose to violate federal copyright law under Section 506, Title 17, U.S. Code." *Id.* at ¶ 6. The defendant argued that he could not be prosecuted for violating R.C. 2923.24 in connection with offenses unless they were violations listed in the Ohio Revised Code. *Id.* at ¶ 15. After reciting the ordinary meaning of "criminally," the Supreme Court concluded that R.C. 2901.04(D) expanded the definition of "criminal offenses in certain circumstances," and that the court could not agree with the defendant's narrow interpretation that R.C. 2923.24 should be limited to offenses under Ohio law. *Id.* at ¶ 15 and 25.

{¶ 18} In this context, the court commented that "[t]he state is not prosecuting [the defendant] for violating federal copyright law, nor is the state seeking to have a penalty imposed against [him] for violating federal copyright law. And the state is not required to prove that [the defendant] violated federal copyright law in order to obtain a conviction against him for possessing criminal tools. Rather, the state need only show that his purpose was to violate the law." *Id.* at ¶ 22.

{¶ 19} There is no question that Baum intended to violate the law with respect to Criminal Trespass. During his testimony, Baum admitted that he was inside the Perrine Street property on May 9, 2016, that he went in through a back window, that he did not have permission to be there, that he was in the property for 15-20 minutes, and that he

ran up to the attic to hide from the police    Transcript of Proceedings, Vol. II, pp. 359, 378-379, and 380.

{¶ 20} Based on Baum's own testimony, he knowingly entered the property without privilege, and this would have provided the required predicate for a conviction of Possession of Criminal Tools.   As a result, any arguments regarding sufficiency of the evidence or manifest weight of the evidence would be frivolous.

### B.   Alleged Ineffectiveness of Trial Counsel

{¶ 21} Baum's third potential assignment of error alleges that trial counsel was ineffective on two grounds:   (1) by failing to secure a time waiver to conduct additional discovery, including obtaining a transcript of the preliminary hearing in Dayton Municipal Court; and (2) by failing to file a request that Baum's competency be evaluated.

{¶ 22} "In order to prevail on a claim of ineffective assistance of counsel, the defendant must show both deficient performance and resulting prejudice."   *State v. Matthews*, 189 Ohio App.3d 446, 2010-Ohio-4153, 938 N.E.2d 1099, ¶ 39 (2d Dist.), citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).   "Trial counsel is entitled to a strong presumption that his conduct falls within the wide range of effective assistance, and to show deficiency, the defendant must demonstrate that counsel's representation fell below an objective standard of reasonableness."   *Id.*

{¶ 23} "The adequacy of counsel's performance must be viewed in light of all of the circumstances surrounding the trial court proceedings. * * * Hindsight may not be allowed to distort the assessment of what was reasonable in light of counsel's perspective at the time."   (Citations omitted.)   *State v. Jackson*, 2d Dist. Champaign No. 2004-CA-

24, 2005-Ohio-6143, ¶ 29.

{¶ 24} "Even assuming that counsel's performance was ineffective, the defendant must still show that the error had an effect on the judgment. * * * Reversal is warranted only where the defendant demonstrates that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Id.* at ¶ 30, citing *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989).

{¶ 25} Regarding the first alleged point of ineffective assistance, the record reveals that the preliminary hearing was discussed at p. 168 of the transcript, during a sidebar conference concerning whether defense counsel could question Parker about a statement he had made at the preliminary hearing. The statement was that Parker had last been at the Perrine St. property three days prior to the burglary. This contrasted with Parker's trial testimony that he had been at the property the day before the break-in. However, defense counsel did not have a transcript of the preliminary hearing; she was referring to her recollection of what she had asked Parker at the preliminary hearing. Transcript of Proceedings, Vol. I, p. 168. Based on a finding of a "good faith" basis for inquiring, the trial court allowed defense counsel to ask Parker about this statement, but indicated that if Parker said he did not recall, that would be the end of the inquiry. *Id.* at p. 170.

{¶ 26} Defense counsel then asked Parker about his testimony at the preliminary hearing. Parker said he believed he had said then that he was at the property the day before the break-in; he did not recall saying he had last been there three days before. *Id.* at pp. 171-172. However, this testimony was irrelevant and could not possibly have affected the outcome of the trial. The testimony was directed to the State's attempt to

prove that the property was "occupied," for purposes of the Burglary charge. However, the jury did not find Baum guilty of that charge; the jury found him guilty of Criminal Trespass, which did not require a finding that the property was occupied. Instead, Criminal Trespass required a finding only that Baum entered the property without permission – which he admitted.

{¶ 27} As part of the ineffectiveness of counsel claim, Baum also raises a potential issue about further discovery trial counsel should have done. At pp. 274-275 of the transcript, defense counsel indicated that the case had been tried quickly due to speedy trial concerns and her belief that Baum did not deserve to be in jail any longer. Counsel further stated that when she was able to speak that day with witnesses who were next-door neighbors of the Perrine Street property, she was told about another potential witness who lived on the other side of the property. According to defense counsel, "this individual would only be relevant for basically one statement. Eric – Mark Parker allegedly told this guy that he uses 105 Perrine to store materials in." *Id.* at p. 277. After discussion, the court indicated that the statement would not be admissible on rebuttal because it had not been first presented to Parker, and he did not deny it. *Id.* at p. 278. Defense counsel then decided not to call the witness. *Id.* at p. 279.

{¶ 28} As with the evidence from the preliminary hearing, this testimony would be irrelevant for purposes of appeal, because it was intended to dispute the State's contention that the property was occupied for purposes of the Burglary charge. This argument, therefore, would be frivolous.

{¶ 29} The second claim of alleged ineffective assistance of counsel pertains to whether trial counsel should have filed a request to evaluate Baum's competency based

on information trial counsel received from witnesses who knew Baum.  This issue was discussed at pp. 253-257 of the trial transcript.

{¶ 30} "It has long been recognized that 'a person [who] lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial.' "  *State v. Smith*, 89 Ohio St.3d 323, 329, 731 N.E.2d 645 (2000), quoting *Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975).  "Fundamental principles of due process require that a criminal defendant who is legally incompetent shall not be subjected to trial." *State v. Berry*, 72 Ohio St.3d 354, 359, 650 N.E.2d 433 (1995), citing *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).  (Other citation omitted.)

{¶ 31} This issue is governed in Ohio by R.C. 2945.37(B), which provides that:

In a criminal action in a court of common pleas, a county court, or a municipal court, the court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial.  If the issue is raised before the trial has commenced, the court shall hold a hearing on the issue as provided in this section.  If the issue is raised after the trial has commenced, the court shall hold a hearing on the issue only for good cause shown or on the court's own motion.

{¶ 32} R.C. 2945.37(C)-(E) provide procedures for holding such a hearing if determined to be needed.  R.C. 2945.37(G) further states that:

A defendant is presumed to be competent to stand trial.  If, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of

understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court shall find the defendant incompetent to stand trial and shall enter an order authorized by section 2945.38 of the Revised Code.

{¶ 33} In *State v. Bock*, 28 Ohio St.3d 108, 502 N.E.2d 1016 (1986), the Supreme Court of Ohio stated that:

The failure to hold a competency hearing is harmless error where the defendant proceeds to participate in the trial, offers his own testimony in defense and is subject to cross-examination, and the record fails to reveal sufficient indicia of incompetency.

*Id*. at paragraph one of the syllabus.

{¶ 34} Subsequently, in *State v. Thomas*, 97 Ohio St.3d 309, 2002-Ohio-6624, 779 N.E.2d 1017, the court stressed that:

[T]he decision whether to hold a competency hearing once trial has begun is in the court's discretion. *State v. Rahman* (1986), 23 Ohio St.3d 146, 156, 23 OBR 315, 492 N.E.2d 401. The right to a hearing rises to the level of a constitutional guarantee when the record contains sufficient "indicia of incompetency" to necessitate inquiry to ensure the defendant's right to a fair trial. *State v. Were*, 94 Ohio St.3d 173, 761 N.E.2d 591, paragraph two of the syllabus; *State v. Berry*, 72 Ohio St.3d at 359, 650 N.E.2d 433. Objective indications such as medical reports, specific references by defense counsel to irrational behavior, or the defendant's demeanor during trial are all relevant in determining whether good cause was shown after the

trial had begun. *State v. Chapin* (1981), 67 Ohio St.2d 437, 21 O.O.3d 273, 424 N.E.2d 317, paragraph one of the syllabus.

*Id.* at ¶ 37.

{¶ 35} After reviewing the record, we find the competency argument frivolous. During the trial, defense counsel indicated that she had subpoenaed two people who lived next door to 105 Perrine Street because her investigator had not been able to reach them prior to trial. In speaking with these witnesses during trial, counsel had just learned that they had seen a "downhill slide, mental-health wise" with the defendant. Transcript of Proceedings, Vol. I, p. 253. Counsel further stated that this was something she had observed in working with Baum over the last week, but had never directly addressed with him. *Id.* Counsel then said: " * * * competency was never an issue for me. He is articulate, very well-spoken, smart. He's a business owner. You know, so I – he's definitely competent to testify." *Id.* at p. 254.

{¶ 36} Baum's counsel then explained that she wanted Baum to have the opportunity to know that there were options for trial in terms of defense tactics, one being a not guilty by reason of insanity ("NGRI") defense. *Id.* Counsel also stated that Baum had said he did not want to pursue such a defense, and they would waive the NGRI defense. *Id.* At this point, the court questioned Baum about the NGRI defense, and the following exchange occurred:

> THE COURT: The only point –
>
> * * *
>
> THE COURT: – we're trying to make clear is whether or not that would be a defense that you would want to present to the jury, a defense of

not guilty by reason of insanity.

THE DEFENDANT: I hadn't actually had any – anything in particular, * * * presented to me as – as, * * * a – cause for, * * * doubt or a cause for, * * * you know, reason –

* * *

THE DEFENDANT: – for that. Yeah, if there was something * * * in particular that * * * you know, something I've said, something –

* * *

THE DEFENDANT: – I'd suggested, maybe something that – that I'd said that * * * misrepresented what I was actually, you know, intended to * * * convey, you know, something that was going to – if I come off wrong, you know, I – I could have had * * * an opportunity to * * * either one, rectify the miscommunication or * * * I * * * could've * * * used that example as, perhaps, something that was outside of, my * * * awareness up to that point, and maybe something a mental health professional would want to evaluate.

But I've had mental health evaluations – * * * I think, two – in the last eight years. And, * * * I haven't had any diagnoses of * * * any sort, * * * neuroses, psychoses disorder, anything. So –

* * *

THE DEFENDANT: – I just personally * * * there were things, I think that we didn't want to get into for our purposes here –

* * *

THE DEFENDANT: – that * * * would've been rather * * * admittedly

convoluted.

\* \* \*

"Complex," rather, would be a better word.

\* \* \*

THE DEFENDANT:   And so we won't get into that. And I, \* \* \* understand that. But that's not something that's gonna happen, so –

THE COURT:   Okay.

THE DEFENDANT:   – I appreciate the concern.

THE COURT:   Okay.   Good.   I just wanted to make a record of that.   We've done that.

Transcript of Proceedings, Vol., pp. 256-257.

{¶ 37} As an initial matter, there would have been no reason to file a request for a hearing, because trial counsel did not believe Baum was incompetent.   When witnesses expressed some concern, counsel properly brought the matter to the attention of Baum and the trial court, even though counsel felt Baum was competent.

{¶ 38} Furthermore, Baum affirmatively rejected the NGRI defense, and there was also no indicia at trial of incompetency.   "Incompetency is defined in Ohio as the defendant's inability to understand ' \* \* \* the nature and objective of the proceedings against him or of presently assisting in his defense.'   R.C. 2945.37(A).   Incompetency must not be equated with mere mental or emotional instability or even with outright insanity.   A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel."   *Bock*, 28 Ohio St.3d at 110, 502 N.E.2d 1016.

{¶ 39} As counsel noted, Baum was quite articulate. Baum also stated that he had never had any diagnoses of mental problems. Thus, there would have been no reason for the trial court to hold a competency hearing.

{¶ 40} Accordingly, we find no non-frivolous issues regarding whether trial counsel rendered ineffective assistance.

C. Issues Regarding Cruise Camera Video

{¶ 41} Baum's final potential assignment of error raises the issue of whether the trial court erred by failing to either grant a continuance or exclude DVD video taken from a cruiser camera. According to Baum, the trial court should have allowed him to make an informed decision about whether he should take the stand in his own defense after technical issues prevented him and his trial counsel from viewing the video in its entirety. Consideration of this issue occurred at pp. 291-301 and 326-341 of the Transcript of Proceedings, Vol. II.

{¶ 42} After reviewing the record, we find this potential assignment of error frivolous. As an initial point, Baum somewhat mischaracterizes what occurred. It is true that trial counsel and Baum were unable to view the video prior to trial due to technical issues. However, when this issue was raised with the trial court, the court stated that Baum would be permitted to view the video in its entirety, if he chose to do so, before getting on the stand. *Id.* at pp. 295 and 299. The court also indicated it would give Baum time, while another witness testified, to decide if he wanted to testify, and if so, whether he wished to view the video in its entirety. *Id.* at pp. 300-301.

{¶ 43} After the witnesses finished testifying, the court asked Baum if he wished to

testify, and Baum said, "Oh, absolutely." *Id.* at p. 326. At that point, the court discussed with Baum whether his decision to testify was voluntary, and Baum was then allowed to watch as much of the video as he wished. *Id.* at pp. 327-342.

**{¶ 44}** As a final matter, the State did not play the video to the jury during Baum's cross-examination, even though Baum told the police three different stories on the video about why he had been in the Perrine Street house. *Id.* at pp. 296-297. Baum was also acquitted of Burglary, and, as has been noted, admitted he was in the house without permission. As a result, any argument pertaining to the video is irrelevant.


### III. *Anders* Review

**{¶ 45}** We have conducted a thorough and complete examination of all the proceedings to decide if this appeal is wholly frivolous. *Penson v. Ohio*, 488 U.S. 75, 80, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988), citing *Anders*, 386 U.S. at 744, 87 S.Ct. 1396, 18 L.Ed.2d 493. After reviewing the entire record, including the filings, the written transcript of the trial and sentencing hearing, the Presentence Investigation Report, and the sentencing entry, we cannot find any non-frivolous issues for review. Accordingly, the judgment of the trial court is affirmed.


. . . . . . . . . . . . .


HALL, P.J. and DONOVAN, J., concur.

Copies mailed to:

Mathias H. Heck, Jr.
Andrew T. French
Thomas J. Manning
Eric Baum
Hon. Dennis J. Langer