[Cite as *State v. Stephens*, 2020-Ohio-6646.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

STATE OF OHIO                            :
                                         :
    Plaintiff-Appellee               :    Appellate Case No. 28693
                                         :
v.                                       :    Trial Court Case No. 2018-CR-697
                                         :
KNISHA L. STEPHENS                       :    (Criminal Appeal from
                                         :    Common Pleas Court)
    Defendant-Appellant              :
                                         :

. . . . . . . . . . .

## O P I N I O N

Rendered on the 11th day of December, 2020.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

NICOLE RUTTER-HIRTH, Atty. Reg. No. 0081004, 2541 Shiloh Springs Road, Dayton, Ohio 45426
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-Appellant, Knisha Stephens, appeals from her conviction on one count of aggravated burglary, a first-degree felony. Following Stephens's guilty plea, the trial court sentenced her to community control sanctions for a period not to exceed five years. Community control was subsequently revoked, and the trial court imposed a seven-year prison term.

{¶ 2} On August 5, 2020, Stephens's appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), indicating that she found no potential assignments of error having arguable merit. Counsel therefore asked us to conduct an independent review of the record to decide if there were any meritorious issues to present on appeal. Counsel did not suggest any possible issues.

{¶ 3} On August 11, 2020, we notified Stephens that her appellate counsel was unable to find any meritorious claims to present for review and granted her leave to file a pro se brief within 60 days. Before our order was filed, the State filed a response to the *Anders* brief and asked for an opportunity to respond if we found an appealable issue and appointed new counsel.

{¶ 4} On August 28, 2020, Stephens filed a pro se brief raising one proposed assignment of error. She then filed a second pro se brief on August 29, 2020, raising a second proposed assignment of error. On September 30, 2020, the State filed a further notice, stating that it did not intend to respond to Stephens's pro se brief. However, as before, the State indicated that it would like a chance to respond if we found an appealable issue and appointed new counsel.

{¶ 5} After reviewing the record and conducting our independent *Anders* review, we find no issues with arguable merit for Stephens to advance on appeal. Accordingly,

the judgment of the trial court will be affirmed.

I. Factual Background

{¶ 6} In March 2018, Stephens was indicted on two counts of aggravated burglary (physical harm and deadly weapon), and two counts of felonious assault (serious harm and deadly weapon) arising from an incident that occurred on February 18, 2018. The burglary charges were first-degree felonies and the felonious assault charges were second-degree felonies. Stephens pled not guilty to the charges, and counsel was appointed to represent her.

{¶ 7} Trial was set for May 14, 2018, but Stephens appeared in court on May 9, 2018, and pled guilty to one count of aggravated burglary (deadly weapon). Pursuant to the parties' plea agreement, the State agreed to dismiss the remaining charges and to recommend community control sanctions that included "a no-break status" and five years of community control. Transcript of Proceedings (Tr.), p. 4. During the plea hearing, the trial court questioned Stephens about various matters. Stephens indicated that she understood the terms of the plea agreement, that she had attended school through eighth grade, and that she "knew how to read and write and understand the English language." *Id.* at p. 4-5.

{¶ 8} The trial court also thoroughly explained the potential sanctions, including a potential prison term of three to 11 years, and indicated that Stephens could be sent to prison for up to 11 years if she violated any of the community control sanctions. *Id.* at p. 5-6. Stephens stated that she understood. *Id.* at p. 6. Finally, Stephens's rights were thoroughly explained, and she waived her constitutional rights. *Id.* at p. 7-8. Stephens

further stated that she had had an opportunity to speak with her attorney and did not express any complaints.  *Id.* at p. 8-9.

{¶ 9} After pleading guilty, Stephens also signed a written waiver and plea, which was filed with the court.  The trial court found Stephens guilty, found that her plea was voluntarily, knowingly, and intelligently made, and found, based on the State's recital, that a factual foundation existed for the plea.  *Id.* at p. 9.  At that point, the court ordered a presentence investigation report ("PSI"), and set sentencing for May 23, 2018.

{¶ 10} At the sentencing hearing on May 23, 2018, the trial court said that it had read the probation report and saw no reason to deviate from the State's recommendation.  *Id.* at p. 10.  At that point, the court asked Stephens if she had any comment, and she simply thanked the court for the ability to be on probation.  *Id.* at p. 11.  The court then explained the terms of Stephens's five-year intensive community controls, including the fact that since she was on a "no-break" status, any violation of the rules would mean that she would be subject to going to prison.  *Id.* at p. 11-12.  The court then set a status hearing for 120 days later.  *Id.* at p. 13.

{¶ 11} A judgment entry of conviction was filed on May 24, 2018, and included the setting of a status hearing on September 12, 2018.  On the day of the hearing, Stephens's counsel appeared and told the court that he had been in contact with Stephens a few days earlier and told her to be in court, but she had not appeared.  Tr. at p. 14.  The court noted that some issues had arisen with probation and issued a warrant for Stephens's arrest.  *Id.*

{¶ 12} After Stephens was arrested, a revocation hearing was held on March 6, 2019.  During the hearing, Stephens's probation officer, Renee Reiner Brown, testified

that Stephens had failed to comply with Probation Rule #4, which required her to have employment. Specifically, Stephens did not have a job and never had a job. *Id.* at p. 21. Stephens also missed a lot of office visits, and thus violated Probation Rule #5. *Id.* at p. 22. In addition, Stephens failed to comply with Probation Rule #6, which required her to abstain from drugs of abuse, because she never had a clean urine test. Most importantly, Stephens violated Probation Rule #10 by refusing to be tested for the MonDay program, a community based correctional facility. *Id.* at p. 25-26. Finally, Stephens did not comply with treatment at Samaritan Behavioral Health. *Id.* at p. 27-28.

{¶ 13} Stephens's therapist at Samaritan Behavioral Health also testified and stated that Stephens's attendance at therapy sessions had been "spotty"; sometimes Stephens would go several weeks without attending, when she was supposed to attend twice a week, and sometimes Stephens would attend once a week. *Id.* at p. 51. Finally, Stephens testified and admitted that she had committed multiple community control violations while on "no break" status. *Id.* at p. 60-61.

{¶ 14} After hearing the evidence, the trial court found that Stephens's violation of Rule 4 was technical only, but that her violations of the other rules had been shown by a preponderance of the evidence. The court revoked Stephens's community control and sentenced her to seven years in prison.

{¶ 15} Stephens did not timely appeal from the trial court's judgment, which was issued on March 11, 2019. However, on June 7, 2019, Stephens filed a motion with our court, seeking leave to file a delayed appeal. We overruled the motion and dismissed the appeal because Stephens had failed to file a notice of appeal in the trial court. *See State v. Stephens*, 2d Dist. Montgomery No. 28430 (July 23, 2019). Subsequently,

Stephens correctly filed a notice of appeal in the trial court along with a motion for leave to file a delayed appeal. The State asked us to deny the motion, but we allowed the appeal to proceed. *See* Decision & Entry (Feb. 25, 2020). As indicated, after counsel was appointed, counsel filed an *Anders* brief.

## II. *Anders* Standards

{¶ 16} In considering appeals where *Anders* is raised, we must conduct an independent review of the record to decide if an appeal is "wholly frivolous." *Anders*, 386 U.S. at 744, 87 S.Ct. 1396, 18 L.Ed.2d 493. *See also Penson v. Ohio*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988). If we decide an appeal is frivolous, we may grant counsel's request to withdraw and then dismiss the appeal without violating any constitutional requirements; we can also decide the case on the merits if state law requires it. *State v. McDaniel*, 2d Dist. Champaign No. 2010-CA-13, 2011-Ohio-2186, ¶ 5, citing *Anders* at 744. However, if we find that any issue involves "legal points that are arguable on their merits, and therefore are not wholly frivolous, * * * we must appoint other counsel to argue the appeal." *State v. Pullen*, 2d Dist. Montgomery No. 19232, 2002-Ohio-6788, ¶ 2, citing *Anders* at 744.

{¶ 17} "*Anders* equates a frivolous appeal with one that presents issues lacking in arguable merit. An issue does not lack arguable merit merely because the prosecution can be expected to present a strong argument in reply, or because it is uncertain whether a defendant will ultimately prevail on that issue on appeal. An issue lacks arguable merit if, on the facts and law involved, no responsible contention can be made that it offers a basis for reversal." *State v. Marbury*, 2d Dist. Montgomery No. 19226, 2003-Ohio-3242,

¶ 8, citing *Pullen*.


### III. Potential Issues

**{¶ 18}** After conducting an independent review of the record pursuant to *Anders*, we agree with Stephens's appellate counsel that, based on the facts and relevant law, there are no issues with arguable merit to present on appeal. Nonetheless, Stephens has filed two appellate briefs in which she presents the following proposed assignments of error, recited verbatim:

> Counsel Was Ineffective by Ignoring Defendant [sic] Learning Disability & Mental Incapacity Under Sixth Amendment Her Rights Were Violated; Denied Under Ohio Criminal R. 41(B). (August 28, 2019 Brief).

> Appellant Argues That She Lacked the Requisite Knowledge to Enter Her Guilty Plea Because She Did Not Understand the Sentencing; Her Constitutional Rights, Due to 1st Counsel Not Explaining the Ramifications of Her Plea. (August 29, 2019 Brief).

**{¶ 19}** Under these proposed assignments of error, Stephens contends that her trial counsel was ineffective because he failed to make sure Stephens understood her explanation of rights and failed to determine if Stephens's waiver of rights and plea were knowingly, intelligently, and voluntarily made. Her argument appears to be based on the fact that she has a learning disability, along with basic comprehension issues, and is "troubled mentally." August 28, 2019 Brief, p. 3.

**{¶ 20}** "In order to prevail on a claim of ineffective assistance of counsel, the defendant must show both deficient performance and resulting prejudice." *State v.*

*Matthews,* 189 Ohio App.3d 446, 2010-Ohio-4153, 938 N.E.2d 1099, ¶ 39 (2d Dist.), citing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Trial counsel is entitled to a strong presumption that his conduct falls within the wide range of effective assistance, and to show deficiency, the defendant must demonstrate that counsel's representation fell below an objective standard of reasonableness." *Id.*

{¶ 21} Furthermore, "[t]he adequacy of counsel's performance must be viewed in light of all of the circumstances surrounding the trial court proceedings." *State v. Jackson,* 2d Dist. Champaign No. 2004-CA-24, 2005-Ohio-6143, ¶ 29, citing *Strickland.* "Hindsight may not be allowed to distort the assessment of what was reasonable in light of counsel's perspective at the time." *Id.,* citing *State v. Cook,* 65 Ohio St.3d 516, 524, 605 N.E.2d 70 (1992).

{¶ 22} "Even assuming that counsel's performance was ineffective, this is not sufficient to warrant reversal of a conviction. 'An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.' " *State v. Bradley,* 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989), quoting *Strickland* at 691. "To warrant reversal, '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Id.,* quoting *Strickland* at 694.

{¶ 23} After reviewing the record, we find no arguable merit to Stephens's claims. The trial court thoroughly explained Stephens's rights during the plea hearing. The court also inquired as to Stephens's education, and Stephens, when given the opportunity to

speak, did not mention that she had a learning disability or comprehension issues, nor did she assert that she had mental problems. Stephens also denied during the presentence investigation that she suffered from any mental conditions. PSI, p. 6. Furthermore, Stephens presented testimony from her therapist at the revocation hearing. The therapist did not state that Stephens had mental problems or difficulty in comprehension; the record is clear that Stephens's problem was her long-standing inability to refrain from using drugs.

{¶ 24} The family history in the PSI does indicate that Stephens said she had dropped out of high school in ninth grade due to a learning disability. However, Stephens did not say that she had any basic comprehension issues. PSI at p. 6. Again, Stephens told the trial court during the plea hearing that she could read and write and understood the English language. Stephens also expressed a number of times during the plea hearing that she understood what the court was saying. Tr. at p. 5, 6, 7, and 8.

{¶ 25} Additionally, Stephens told the court that she had had an opportunity to talk with her attorney about the case. *Id*. at p. 9. Stephens made no complaint about her attorney or anything else during the plea hearing, nor did she complain about her prior attorney during the revocation hearing.[1] Stephens also was given an opportunity to speak at the sentencing hearing, and she did not complain about her attorney or indicate that she had problems of any kind.

{¶ 26} Stephens did mention at one point to her probation officer that she might be having some type of mental issues, but the officer (Brown) believed that this was just

---

[1] Different attorneys represented Stephens at the plea hearing and the revocation hearing.

Stephens's way of attempting to manipulate her to send her to one drug program versus another. *Id.* at p. 34.

**{¶ 27}** Based on the preceding discussion, Stephens's proposed assignments of error are wholly frivolous. *See Anders*, 386 U.S. at 744, 87 S.Ct. 1396, 18 L.Ed.2d 493.


IV.   Conclusion

**{¶ 28}** We have examined the entire record and have conducted our independent review in accordance with *Penson*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300.   We agree with appellate counsel that no non-frivolous issues exist for appeal.   Accordingly, the trial court's judgment is affirmed.


. . . . . . . . . . . .


TUCKER, P.J. and DONOVAN, J., concur.


Copies sent to:

Mathias H. Heck, Jr.
Andrew T. French
Nicole Rutter-Hirth
Knisha L. Stephens
Hon. Dennis J. Adkins